**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,    )
    )
           Plaintiff,    )
    )
       -vs-    )    No.  CR-09-8-F
    )
CARY LeSEAN ROGANS,    )
    )
         Defendant.    )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR
IMPOSITION OF REDUCED SENTENCE PURSUANT TO
FIRST STEP ACT OF 2018**

The defendant requests a reduced sentence pursuant to Section 404 of the

First Step Act, Pub. Law 111-220 (Doc. 54). The government opposes this request

because, for the reasons shown below, the First Step Act does not afford relief

under the circumstances presented here.

### 1. *Procedural History*

The defendant was charged first by Complaint (Doc. 1) and later by

Indictment (Doc. 13) with possession of 50 grams or more of crack cocaine with

the intent to distribute it. The indictment specifically referred to the applicable

penalty provision: 18 U.S.C. § 841(b)(1)(A), which provides for a statutory penalty

of 10 years to life imprisonment.

Pursuant to a plea agreement (Doc. 26), the defendant entered a plea of guilty to a Superseding Information (Doc. 23). The Superseding Information alleged that the drug amount possessed by the defendant was 5 grams or more of crack cocaine, rather than the 50 or more grams of crack originally charged. This favorable plea agreement meant that the defendant faced a term of imprisonment of 5 to 40 years (18 U.S.C. § 841(b)(1)(B)) instead of the 10 – life sentence he originally faced. The accompanying Plea Agreement contained a stipulation concerning the drug amount involved in the offense: 67.9 grams (Doc. 26 at 4, ¶ 7). The PSR concluded that the defendant was responsible for 253.1 grams of cocaine base (PSR ¶ 18). The difference between these figures is 185.2 grams, a quantity which was addressed at Paragraph 6 of the presentence report. The defendant objected to the inclusion of this amount (PSR *addendum* at 15), which was not opposed by the government (*Statement of Reasons* at 1). The Court sustained this objection, basing its sentencing determination on the 67.9 grams of crack specified in the plea agreement and supported by uncontroverted portions of the PSR (PSR ¶ 9).

Both the presentence writer and the Court concluded that the defendant was a Career Offender as defined by USSG § 4B1.1 (PSR ¶¶ 24, 35, 36; S*tatement of Reasons*). This finding did not affect the defendant's offense level, which was 34 under both the drug guideline and the Career Offender guideline (PSR¶ 18-19, 24)

but it did affect the defendant's criminal history score and therefore the resulting guideline range. His criminal history alone put him in Category V, but because a Career Offender's criminal history category is always VI, the resulting guideline range (after deducting three levels for acceptance of responsibility, PSR ¶¶ 25-26) was 188 – 235 months (*Statement of Reasons*). On September 9, 2009, the Court sentenced the defendant to a term of imprisonment of 188 months, the low end of the guideline range (Doc. 44 at 2).

The defendant now seeks relief from this sentence (Doc. 54), arguing that the First Step Act reduces the statutory range of punishment he faced at sentencing. However, the First Step Act has limited application, and its scope does not permit the result sought by the defendant.

### 2. *First Step Act – Overview and Applicability*

The defendant seeks relief under the First Step Act of 2018 ("FSA 2018"), Pub. Law 115-391, 132 Stat. 5194 (Dec. 21, 2018). Section 404 of this Act provides:

> A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Because the First Step Act concerns the applicability of the Fair Sentencing Act of 2010 ("FSA 2010"), an analysis of the defendant's claims should begin with the effects of the 2010 Act.

FSA 2010 changed the amounts of cocaine base needed to trigger certain statutory minimum and maximum sentences.  Under FSA 2010, the amount of cocaine base required to trigger a statutory range of punishment of ten years to life imprisonment was increased from 50 grams to 280 grams.  The amount of cocaine base needed to trigger a range of 5 - 40 years' imprisonment was increased from 5 grams to 28 grams:

| Statutory Penalty | Before FSA 2010 | After FSA 2010 |
|---|---|---|
| 5 year minimum; 40 year maximum (21 U.S.C. § 841(b)(1)(B) | 5 grams | 28 grams |
| 10 year minimum; maximum of life imprisonment (21 U.S.C. § 841(b)(1)(A) | 50 grams | 280 grams |

FSA 2018 permits – but does not require – a sentencing court to reduce a sentence so as to give retroactive effect to FSA 2010 for what are called "covered offenses."  This is defined as:

> [A] violation of a Federal Statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 … that was committed before August 3, 2010.

FSA 2018, Section 404(a). Here, the defendant entered a plea of guilty to a crack cocaine offense occurring in 2008 (Doc. 23) so his claim may be eligible for consideration.[1]

### 3. *Court's Statutory Authority to Modify a Sentence*

Once a sentence is imposed, a district court may not modify that sentence except as provided by statute. 18 U.S.C. § 3582(c). Here, the parties agree that the Court's statutory authority in this case stems from 18 U.S.C. § 3582(c)(1)(B), (Doc. 54 at 4), which permits a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute."

### 4. *Scope of the Court's Authority*

Here, the parties' views differ.  In the defendant's view, he should be sentenced anew. As he puts it, Congress intended that he "will be resentenced in

---

[1] Some courts, including at least one other judge in this district, have taken the position that this inquiry is strictly a categorical one: the inquiry is whether FSA 2010 *itself* modified the statutory penalty provision, *not* whether an individual defendant's conduct (i.e., the drug quantity attributable to an individual defendant) would result in a change in the statutory penalty provision. *United States v. Boulding*, 379 F. Supp. 3d 646, 651 (E.D. Mich. May 16, 2019); *United States v. Maytubby*, No. CR-06-136-R (Doc. 735 at 5); *United States v. Burris*, No. CR-03-213-R (Doc. 205 at 4-5). Other courts have found, as the United States advocates here, that § 841 penalties are necessarily fact-driven: they depend on the kind and quantity of the drug a *particular defendant* possessed – and thus the eligibility question turns on whether FSA 2010 would affect the penalties faced by *this* defendant, e.g. *United States v. Smith*, 2019 Lexis 124135 (M.D. Fla. July 25, 2019).

accordance with the federal sentencing system currently in effect" (Doc. 54 at 5). If correct, this view would have two significant consequences:

First, it would mean that his statutory range of punishment would change from 5-40 to 0-20 years. This is because the Superseding Information (Doc. 23) charged him with possession with intent to distribute 5 grams or more of cocaine base. After FSA 2010, 5 grams of cocaine base would no longer trigger the five-year mandatory minimum, placing the defendant in the 0 – 20 range instead. True, the Court found at sentencing that the defendant was responsible for 67.9 grams of cocaine base – enough to trigger a five-year mandatory minimum sentence even after FSA 2010.  However, the defendant argues that using a judge-made finding to increase his statutory punishment is now prohibited by *Alleyne v. United States*, 570 U.S. 99, 108 (2013), which held that facts that increase the mandatory minimum sentence are elements which must be found beyond a reasonable doubt by a jury. The defendant's view is that while he may have stipulated to possessing a larger amount of crack, he was not *charged* with an amount sufficient to invoke the imposition of a 5-year mandatory minimum sentence.

Second, the defendant argues that, because of developments in the law that have occurred since his sentencing, he would no longer be considered a Career Offender. This is because of one the prior convictions used to determine his Career Offender status, Assault and Battery on a Police Officer (PSR ¶ 24, 32) no longer

qualifies as a crime of violence for purposes of the Armed Career Criminal Act (Doc. 54 at 9, citing *United States v. Mason*, 709 Fed. Appx. 898 (10th Cir. 2017)). Because of the similarities between the Armed Career Criminal Act and the Career Offender provision, the defendant believes that, if sentenced today, he would no longer be considered a Career Offender (*Id.* at 9-10).

Combining these arguments, the defendant maintains that if sentenced today, his base offense level would be 24, not 32 as before (Doc. 54 at 10, PSR ¶ 18). His Criminal History score would be V, not VI (Doc. 54 at 10, PSR ¶ 35-36). After adjusting for Acceptance of Responsibility, his current guidelines would be 84 to 105 months. He believes those changes make him eligible for immediate release.

Of course, the defendant is *not* being sentenced today. He was sentenced a full decade ago, in full compliance with the law in effect at the time. No matter how many favorable developments in the law have evolved since then, that sentence is final and cannot be modified – unless Congress specifically permits it. Here, the parties agree that the court's authority to modify the defendant's sentence stems from 18 U.S.C. § 3582(c)(1)(B), which permits the court to modify a sentence only "to the extent otherwise *expressly permitted* by statute." (emphasis added).

Determining what Congress meant by "expressly permitted" begins with an examination of the text of Section 404 (b) of FSA 2018. It states that "[a] court that

imposed a sentence for a covered offense may . . . impose a reduced sentence as if

sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the

covered offense was committed." This directive is clear enough: imagine going

back in time to 2008, when the offense here was committed.  Instead of the 5- and

28-gram thresholds that determined whether the statutory range was 5-40 years or

10 to life, imagine instead that FSA's 50- and 280-gram thresholds were in already

in place. Then ask this question: would this have changed the defendant's statutory

range of punishment?

Here, the answer is: no, nothing would change. The defendant was

responsible for 67.9 grams of cocaine base, enough to trigger a statutory range of

5-40 even if the penalties changed by FSA 2010 had been in effect back then.

But according to the defendant's motion, he should get to undertake this trip

back in time while taking along modern developments that did not exist in 2008,

like the holding in *Alleyne*[2]—upon which he relies to argue that his punishment

should be limited to 0-20 years, *not* 5-40—or modern case developments he

believes should allow him to revisit his Career Offender status. The defendant is

happy to undertake this temporal experiment in order to take advantage of FSA

---

[2] *Alleyne* was not decided until June 17, 2013, nearly three years after FSA 2010 became
law. The defendant's argument also overlooks that the Court's finding that the defendant
possessed 67.9 grams was more than just a judge-found fact: it was a fact to which the
defendant *stipulated* prior to the entry of his guilty plea. Doc. 26 at 4.

2010's retroactive benefit but still expects to "be resentenced in accordance with the federal sentencing system currently in effect." (Doc. 54 at 5).

The problem with the defendant's view is that the approach he favors – the best of both past and present – was not "expressly permitted" by Congress. Had Congress intended a court to sentence a defendant anew, recalculate drug quantities, re-examine Career Offender status, or apply any other recent, favorable change, it simply could have said so. It did not. If no provision was made for any other relief, then no other relief can be granted. The *only* sentencing provision that was back-dated was the statutory drug threshold contained in FSA 2010, so the court's authority is limited to modifying a sentence "as if" FSA 2010's penalty provisions had been in place back in 2008.

The defendant counters this reading by arguing that Congress was surely aware of *Alleyne* and other intervening changes in the law when it wrote Section 404, so it surely intended for those precedents to be applied now as well. Perhaps, but it did not explicitly say so, and FSA 2018's textual exclusion of any other intervening changes in the law "supports that Congress did not intend that other changes were to be made as if they too were in effect at the time of the offense." *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019).  *Alleyne* has never been held to have retroactive application in any other context. *In re Payne*, 733 F.3d 1027 (10th Cir. 2013); *United States v. Salazar* ___ Fed. Appx. ___, 2019

WL 3852520, at *3 (10th Cir. August 16, 2019) ("No court has ever recognized *Alleyne* as retroactive."). Congress did not state otherwise here.

The defendant's response to that argument includes a district court case that says that not taking *Alleyne* along on this trip back in time "perpetuate[s] the application of an unconstitutional practice." Doc. 54 at 7, citing *United States v. Stone*, 2019 WL 2475750 (N.D. Ohio June 13, 2019). That concern would come as no consolation to the many, many defendants currently serving sentences for methamphetamine, powder cocaine, heroin, PCP, or any of a myriad of illegal drugs, whose sentences were based on judge-found facts prior to *Alleyne.* Those defendants might well think that their continued existence in prison "perpetuate[s] an unconstitutional practice," though they have no procedural avenue for relief.

The defendant suggests this constitutes only a policy argument, not a reason to deny relief. Doc. 54 at 6. But the defendant's position blurs the very critical distinction between sentencing a defendant in the first place and deciding whether an otherwise-final sentence can or should be modified. Accordingly, *Alleyne* has no application to the issue before the court – which is not whether a judge-found fact can now be used to increase the defendant's sentence, but only whether the court can or should decrease an otherwise-final sentence. The applicable statutory range was determined a decade ago, and despite favorable changes in the law since then, defendants are stuck with that result – unless Congress *expressly* states

otherwise. Here, it has not. That point is made by one of the cases quoted by the defendant, *United States v. Martin*, 2019, WL, 2571148 (E.D.N.Y. June 20, 2019): "...Congress did intend to apply current statutory penalties retroactively, and, *we can assume*, current constitutional protections." (emphasis added). If the defendant and some courts have to surmise or assume the applicability of these recent legal developments, then that alone demonstrates that Congress did not expressly provide for them. That includes the application of *Alleyne* to sentences that were final before that case was decided.

Another fact demands this result. By explicitly referencing FSA 2010 and its changes to statutory penalties, FSA 2018 was clearly designed to once again tweak the punishment disparity between crack cocaine and powder. But if Congress intended and expected for crack defendants to benefit from *Alleyne* or to revisit Career Offender status while leaving powder cocaine defendants stuck with the results of their sentencings, that disparity is magnified, not reduced. Instead of achieving parity between crack and powder defendants, this reading would treat crack defendants much more leniently than powder defendants by giving them new sentencings under legal circumstances that have changed in their favor. In fact, this reading of FSA 2018 would also lead to a marked disparity even among crack defendants: in the defendant's view, those who committed "covered offenses" prior to August, 2010 now get a new sentencing, where everything from drug amounts to

criminal history is re-examined. Those crack defendants sentenced after FSA 2010 but before *Alleyne* are simply stuck.  To the defendant, these incongruous results are not anomalies or unintended consequences, but rather, *exactly* what Congress intended: to allow some, but not all, crack defendants to be re-sentenced with a clean slate. This reading is at odds with the language of the statute. *United States v. Blocker*, 378 F. Supp. 3d 1125, 1129-32 (N.D. Fla. April 25, 2015) ("The First Step Act was intended to make the Fair Sentencing Act's drug-quantity changes available to defendants who were sentenced before that Act took effect—to eliminate the disparity between earlier and later crack defendants."). It is also contrary to the statutory directives of sentencing, especially the need to avoid unwarranted sentencing disparities among similarly situated offenders (18 U.S.C. 3553(a)(6)) and the need to provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A). Under the defendant's reading of FSA 2018, what could be considered "just punishment" would be drastically different between pre- and post-FSA 2010 defendants, even though those defendants might otherwise be identically situated.

The defendant's view that *Alleyne must* be followed is also at odds with the fact that Congress made FSA 2018 discretionary. Section 404(c) states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." But if *Alleyne* applied today, the court would not

have the discretion to avoid its application. The fact that Congress made relief discretionary underscores that it did not intend for these recent constitutional pronouncements to apply.

## CONCLUSION

The defendant seeks relief not expressly provided for by Congress. His motion should be denied.

Respectfully submitted,

TIMOTHY J. DOWNING
United States Attorney

s/*Timothy W. Ogilvie*
TIMOTHY W. OGILVIE
Bar Number:  12428
Assistant United States Attorney
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (Office)
(405) 553-8888 (Fax)
Tim.ogilvie@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:  William P. Earley

s/*Timothy W. Ogilvie*
TIMOTHY W. OGILVIE